Karra J. Porter, #5223
   Karra.Porter@chrisjen.com
JD Lauritzen, #14237
   JD.Lauritzen@chrisjen.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 323-5000
Facsimile:  (801) 355-3472
*Attorneys for Plaintiff Joseph M. Hoskins*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| JOSEPH M. HOSKINS, an individual, | **COMPLAINT** |
| Plaintiff, | **AND JURY DEMAND** |
| v. | |
| JARED WITHERS, in his individual capacity, | Civil No. 2:20-cv-00749-HCN |
| Defendant. | District Judge Howard C. Nielson, Jr. |

Plaintiff Joseph M. Hoskins, by and through undersigned counsel of record, hereby complains against Defendant Jared Withers as alleged below.

**PRELIMINARY STATEMENT AND INTRODUCTION**

On November 13, 2018, Joseph Hoskins was peaceably driving his vehicle along I-80 in Tooele County, Utah.  Joe was from Peoria, Illinois, and his car was registered in that state.

Joe was obeying all traffic laws as he drove along I-80.  Defendant Withers wanted to pull Joe over because he was single male, traveling alone toward Nevada, with an out-of-state license plate; consequently, Withers predicted that Joe might have drugs or cash on him that could be seized.  Because Withers had no legitimate traffic offense to use as an excuse for pulling Joe over, he fabricated a basis for a stop.

Withers pulled Joe over on the pretext of an "equipment violation."  Referring to Utah Code § 41A-1a-404(3)(B)(ii), Withers claimed that Joe's Illinois license plate did not comply with a Utah statute governing Utah license plates.  The license plate on Joe's vehicle had a frame showing the name of an automobile dealership.  The frame (partially) obscured the word "Illinois" at the top of the license plate.  As shown below, a high percentage of persons driving automobiles in Utah have similar license plate frames that obscure part of the state name – for example, persons driving vehicles with Ken Garff, Larry Miller Autogroup, Mark Miller, Tim Dahle, BYU, University of Utah, and Utah Jazz frames.  *(See ¶¶ 26-27, infra.)*

Withers knew that Joe's license plate was not issued in Utah and in fact was issued in Illinois, as evidenced by the fact that he radioed in to dispatch that it was an Illinois plate.  Withers also knew, or any reasonable officer would know, that Utah's license plate requirements did not apply to a vehicle registered in another state.  Knowing that he lacked probable cause, Defendant Withers nonetheless pulled Joe over, questioned him, detained him, let a drug-sniffing dog do significant damage to Joe's car, did significant damage himself in searching Joe's vehicle, arrested Joe, and confiscated money found in Joe's car.  No criminal charges were ever brought against Joe, and the State of Utah's efforts to keep the found money failed.  But Withers' actions forced Joe to hire a lawyer and incur other out-of-pocket costs and damages.

Plaintiff is seeking relief for Defendant's violations of his right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution as well as Article I, § 14 of the Utah Constitution. Plaintiff also seeks relief for Defendant's violation of his rights under the First Amendment to the U. S. Constitution and Art.

I, § 1 of the Utah Constitution, in that Defendant Withers drew a weapon on Joe in response to Plaintiff's speech.

## PARTIES

1. Plaintiff Joseph M. Hoskins ("Joe" or "Plaintiff") is an individual who, at all times relevant to this complaint, resided in Peoria County, Illinois.

2. Defendant Jared Withers ("Withers") is an individual. At times relevant to this complaint, Withers was employed as a Trooper with Utah Highway Patrol ("UHP"), an agency of the State of Utah. Defendant Withers is sued in his individual capacity. At all times relevant to this complaint, Defendant Withers was acting within the scope of his employment with UHP.

## JURISDICTION AND VENUE

3. This action raises questions under the Constitution of the United States and 42 U.S.C. § 1983, and thus this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. Supplemental jurisdiction of Hoskins's state law claims is appropriate under 28 U.S.C. § 1367.

4. Venue is proper in this Court under 28 U.S.C. §§ 1391(a) and 1391(b)(2), as the events or omissions alleged occurred in Tooele County, Utah.

## FACTUAL BACKGROUND

### *Initial Stop*

5. On November 13, 2018 at approximately 2:30 p.m., Defendant Withers was driving in the left lane of Interstate 80 ("I-80") westbound near mile post 71, in Toole County.

6. At that same time, Joe was driving his brown Toyota Avalon in the right lane of I-80 westbound near mile post 71.

7. As reflected by Withers' dashcam, Withers proceeded forward in the left lane, gaining on the Avalon as if to pass, and then slowed.

8. Joe was not violating any traffic laws at this time.

9. Withers' dashcam reflects Wither remaining in the left lane for at least 30 seconds before steering his vehicle into the right lane behind Joe.

10. Withers activated his patrol vehicle lights to signal Joe to pull over.

11. Within two seconds, Joe pulled his vehicle over.

12. It was obvious from its face that the license plate on Joe's car was not a Utah plate. Withers knew, and any reasonable Utah law enforcement officer would have known, that Joe's license plate had not been issued by the state of Utah.

13. While still seated in his vehicle and before speaking with Joe, Withers called the plate into dispatch, stating, "I believe its AZ39390 Illinois." (*See* Withers bodycam at 14:31:26).

14. The sole alleged basis for Withers pulling Joe over, as stated in his subsequent report, was "an equipment violation."

15. At the time Withers read and relayed the Avalon's license plate information, the vehicles were approximately 32-33 feet apart.

16. Withers got out of his vehicle and approached Joe's front passenger window.

17. The following conversation occurred:

| | |
|---|---|
| Withers | Hey, the reason I'm stopping you is your plate frame you've got on your plate is completely covering the state where your plate is from |
| Joe | It is? |
| Withers | Know what I mean? You wanna get out and look at it and I'll show you what I mean? |

4

Joe          Yeah, that's fine. I just got this thing in September.
(See Withers bodycam at 14:31:59)

18. Joe handed his driver's license to Withers.

19. Defendant Withers took the license.

20. Joe exited his vehicle and walked with Withers to the rear of the Avalon.

***License Plate Holders***



**Image 1 & 2: License Plate on Joe's Avalon. Photos taken by Withers at time of stop.**

21. The license plate statute to which Withers was referring is Utah Code 41-1a-404. In his

citation of Joe, Withers indicated he was specifically relying on Utah Code 41-1a-404(3)(b)(ii).

22. Section 41-1a-404(3)(b)(ii) stated, in relevant part:

> (3) Except as provided in Subsection (5), a license plate shall at all times be:
>   (a) securely fastened:
>       (i)    in a horizontal position to the vehicle for which it is issued to prevent the plate from swinging;
>       (ii)   at a height of not less than 12 inches from the ground, measuring from the bottom of the plate; and
>       (iii)  in a place and position to be clearly visible; and
>   (b) maintained:
>       (i)    free from foreign materials; and
>       (ii)   in a condition to be clearly legible. . . .
>                          *   *   *

5

> (6) A violation of this section is an infraction.

23. Utah Code § 41-1a-404 is a Utah statute applicable to Utah license plates.  It does not apply to vehicles "registered in another state and owned by a nonresident of the state[.]"  *See* Utah Code 41-1a-201.

24. Even if Utah's license plate laws did not explicitly exempt vehicles registered in other states, it would have been obvious to any law enforcement officer that Utah law could not govern the requirements of license plates issued in other states.  *See, e.g., State v. Hartman*, No. 141500407, *Amended Findings of Fact Conclusions of Law, and Order Suppressing Evidence*, Finding #32 (Third Dist. Ct. June 19, 2015).

25. Utah Code 41-1a-403 specifies which portions of a license plate must be legible. The code reads in relevant part:

> License plates and the required letters and numerals on them, except the decals and the slogan, shall be of sufficient size to be plainly readable from a distance of 100 feet during daylight.

26. The letters and numerals on Joe's plate (AZ 39390) were not obscured in any way.

27. Upon information and belief, Utah Code 41-1a-404 and -403, with respect to license plate frames, are rarely enforced, and Withers' stop was pretextual even if Utah law had applied to Joe's out-of-state license plates.  Facts supporting this belief include:

   a. From a survey conducted by plaintiff's investigator, approximately one third of Utah vehicles have license plate frames that obscure part or all of the name of the state.

   b. License plate frames that obscure part or all of the name of the state are available for purchase from Utah educational institutions, including State institutions. These

6

educational institutions include Brigham Young University, University of Utah, Utah State University, and Weber State University.

c. Many Utah automobile dealerships install license plate frames that partially obscure the name of the state.  These dealerships include: Cougar Auto, Curtis Auto, Cutrubus Layton, Ed Kenley, Grimm Auto, Gus Paulos, Hamilton Auto, Henry Day Ford, Jerry Seiner, Ken Garff Auto Group, Larry Miller Auto Group, Mark Miller, Markosian Murdock, Menlove, Mercedes-Benz of Farmington, Millennium Auto, National Auto PlazaNissan SLC, Prime Auto, PRM Auto, Salt Lake Strong, South Town Mazda, Stephen Wade St. George, Stockton Honda, Tim Dahle, Toole Auto Mall, Tony Divino, Young Chevrolet, Velocity Auto, West Auto Sales.



**Images 3 & 4: Examples of commonly observed license plate frames in Utah**

d. It is reasonable to infer that, if Sections 41-1a-404 and -403 were enforced in the manner claimed by Withers, even sporadically, then automobile dealers, institutes of higher education, and vehicle owners would not use such plates and they would not be so prevalent in Utah.

28. The conversation on scene between Joe and Withers continued:

Withers     See what I mean [about the frame]?

Joe         Yeah, it came from the dealership like that.

7

| | |
|---|---|
| Withers | They put that plate frame on there? OK. Yeah, you know a lot of people don't think about that, but the way we look at it is, say this car is involved in some kind of crime or something and you can't read the plate, that causes a problem for us. |
| Joe | Yeah, I wish I would've noticed it because I would've known that was a problem. |
| Withers | Not a huge deal. Do you got a registration and insurance for this thing? |
| Joe | Oh, yeah. |
| Withers | You can hop back in. I'm not gonna be needing you out here again. |

(See Withers bodycam at 14:32:21)

29. Joe returned to sit in the driver's seat of his vehicle.

30. Withers returned to stand at the open passenger window of Joe's vehicle.

31. At this point, Withers' investigation into the alleged equipment violation had concluded.  Withers had all the information he needed for an equipment citation.

### Continued detention and dog sniff

32. While Joe looked for his insurance information, Withers questioned Joe.

33. The following conversation took place between Joe and Withers:

| | |
|---|---|
| Withers | Where you headed to today? |
| Joe | Uh, Reno. |
| Withers | What's in Reno? |
| Joe | Gambling. |
| Withers | Gambling in Reno. |
| Joe | Yeah. |
| Withers | Do ya got insurance on it? |

8

| | |
|---|---|
| Joe | Yeah, I do but it's Esurance. Do you want me to call my girlfriend? |
| Withers | Like, do you have some kind of proof of insurance, like on a phone or a card or—you gotta carry some kind of proof of insurance in the car. |
| Joe | It should be in an email. |
| Withers | You say you have an email with it? You have an electronic copy? Is that what you mean? |
| Joe | Yeah. |
| Withers | Will you turn the car off for me? I'd like you to come back to my car with me. I'm gonna have a few questions for you while you're looking for that. |
| Joe | Yeah, sure. |

(See Withers bodycam at 14:33:06)

34. Joe turned off the engine, exited his vehicle, and walked with Withers toward the patrol vehicle.

35. Before entering the patrol vehicle, Withers asked Joe to lift his shirt and turn in a circle to show he had no weapons in his waistband.

36. Joe complied with this request, lifting his shirt to expose his bare stomach and turning in a circle to show his bare back.

37. Withers climbed into the driver's seat of the patrol vehicle, and Joe climbed into the front passenger seat.

38. Once inside the patrol vehicle, Withers began plugging Joe's information into his computer.

39. If Withers had been filling out a citation for the alleged equipment violation, the citation would have taken only a few minutes to complete.

<table>
<tr><td colspan="2"><b>COMMERCIAL VEHICLE INFORMATION</b></td><td colspan="3"><b>UTAH HIGHWAY PATROL</b><br>UNIFORM CITATION OR INFORMATION AND SUMMONS TO APPEAR</td><td>CASE NO.<br>091800760</td><td>CITATION NO.<br>C158721340</td></tr>
</table>

| COMMERCIAL VEHICLE | ☐YES ☒NO | | | | | |
| HAZMAT | ☐YES ☒NO | | | INCIDENT NO. U11024449 | | ORI UTUHP0900 |
| 16+ OCCUPANTS | ☐YES ☒NO | | | | | |
| OUT OF SERVICE | ☐YES ☒NO | | | | | |
| CVSA INPECTION | ☐YES ☒NO | | | | | |

NAME (Last) **HOSKINS**  (First) **JOSEPH**  (Middle) **MICHAEL**  DOB  PHONE

GVW ___  DOT NO. ___

ADDRESS **1014 W KENSINGTON DR**  (City) **PEORIA**  (State) **IL**  (Zip) **616140000**

Driver License No.  CDL Presented **No**  Expires **12/2022**  State **IL**  Restriction  Place of Birth  Social Security No. _-_-_  Motorcycle **No**

TYPE COMPANY/ UNIT # ___

ADDRESS ___  CITY/ STATE ___

Gender **M**  Ethnic Code **W**  Height **5'6"**  Weight **215**  Eyes **BRO**  Hair **RED**  Vehicle License No. **AZ39390**  State **IL**  Expires **09/2019**

**STATE OF UTAH**
☒ COUNTY OF **Tooele**
☒ CITY OF **OUTSIDE CITY LIMITS**

Picture ID **Yes**  Vehicle Make **TOYT**  Vehicle Model **Avalon**  Vehicle Type **4D**  Vehicle Year **2007**  Vehicle Color **BRO**  Accident: **No**  Injury Severity: **None**

THE DEFENDANT IS HEREBY GIVEN NOTICE TO APPEAR IN:
COURT OF
**3rd District Court - Tooele**
LOCATION
**Tooele County Courthouse, 47 South Main Street, Room 318, Tooele, UT, Fax: (435) 843-4702**

OCCURRED ON (DATE) **11/13/2018**  MILITARY TIME **14:30**  DIRECTION OF TRAVEL **W**

LOCATION **I-80, OUTSIDE CITY LIMITS**  COUNTY **Tooele**  MILE POST NO. **71**

| UT | CO | CY | THE ABOVE NAMED DEFENDANT IS CHARGED WITH VIOLATING THE FOLLOWING Description | Code No. | Code Type |
|---|---|---|---|---|---|
| ✓ | | | UT - LICENSE PLATE TO BE CLEARLY VISIBLE (IN) | 41-1A-404(3)(B)(II) | TRAF |
| ✓ | | | UT - MONEY LAUNDERING (MC)($90,000 CASH/FELONY) | 76-10-1906(1)(C)(I) | MISD |
| ✓ | | | UT - CRIMINAL CONSPIRACY (MC) | 76-4-201 | MISD |

Speeding  MPH Over  Interstate **Yes**  Alcohol BAC

Not less than (5) five nor more than (14) fourteen days after issuance of this citation or at a time specified by the court. IF YOU FAIL TO APPEAR, THE COURT MAY ISSUE A WARRANT FOR YOUR ARREST.

WITHOUT ADMITTING GUILT I PROMISE TO APPEAR AS DIRECTED HEREIN

FOR COURT USE ONLY
DATE OF CONVICTION
FINE ___  SUSPENDED ___
JAIL ___  SUSPENDED ___

SIGNATURE OR  **X**

OFFENSE TRACKING NUMBER:

DISPOSITION FELONY ☐Yes ☐No
PLEA/FINDING  SEVERITY
☐Guilty  ☐Declination ☐Minimum
☐No Contest  ☐Diversion ☐Intermediate
☐Not Guilty  ☐Dismissed ☐Maximum
☐Plea in Abeyance ☐Forfeited Bail

OFFICER **Jared Withers**  BADGE NO. **ID: 228**

COMPLAINANT  DATE OF CITATION **11/13/2018**

Signature of Judge or Court Clerk Required

**COURT COPY**  DATE SENT TO DLD  DOCKET NO.  **RIGHT INDEX**

MAIL THIS COPY TO:
Driver License Division PO Box 144501  Salt Lake City, UT 84114-4501

I certify that the information on this form is true and correct abstract of the record on file in the court concerning the described conviction of the driver shown.

Signature or Name of Judge  Signature of Clerk

Figure 1: Copy of Joe's Citation
(Driver's license number and date of birth redacted for privacy)

40. Instead of completing the citation, Withers began interrogating Joe about his travel plans and employment status.

10

41. Withers then called Tooele County dispatch and had it run a driver's license and warrants check on Joe. (*See* Jared Withers Utah Highway Patrol Crime Report, Incident: U11024449, Report R14072685).

42. Withers did not wait to hear back from dispatch.  Instead, Withers told Joe to "hang tight" for a minute and exited the patrol vehicle.

43. Joe did not believe he was free to leave.

44. Withers opened the rear driver's side door and got out his K9, "Gus."

45. Withers walked his dog up to Joe's Avalon.

46. Withers had his dog conduct a sniff search around the exterior of the Avalon for approximately one minute.

47. Bodycam footage shows that, in total, the dog made three passes of the driver's side, five passes of the front side, two passes of the rear of the vehicle, and two passes of the passenger side, all without exhibiting conduct consistent with a K-9's retained final response.  Among other things, the dog never exhibited a "sit," the trained response.

48. Although not exhibiting a trained final response, the dog jumped and clawed at the outside of the vehicle's front passenger windshield and the passenger side rearview mirror.

49. The dog also jumped up, clawing the front passenger door, and attempted twice to enter the Avalon through the open front passenger side window.

50. The dog caused significant damage to Joe's Avalon ("raked the crap out of" the car and "destroy[ing] the door," as Withers later described it).

51. Withers returned to the patrol vehicle and placed the dog back in a kennel in the rear driver's side seat.

52. Later on during the stop, Withers took a cell phone call from someone he identified as "Jimmy." Withers stated the following to Jimmy:

> Basically, the dog tried to jump—I mean the dog raked the crap out of the car twice trying to get through the passenger's window. He never gave a 'sit,' but there's no doubt in my mind he's trying to go after odor. And so after raking the hell out of the guy's paint twice, I was like, you know what? I'm just pulling it off of it. I mean, he's destroyed the door with his back feet trying to get into the car. He did kind of a half-ass indication after the first time when I yanked him out of the window, and then—I could see him hook odor, drop right back to the passenger window and try to bail through again. I'm like, 'ok, I'm calling that." (See Withers bodycam at 15:46:37)

53. Withers later wrote an incident report on his stop and search of Joe's vehicle.

54. Withers' incident report does not state that Gus alerted. Instead his report about the dog's free-air sniff stated:

> His body tensed, his tail began wagging faster and his sniffing became more intense. He quickly worked back to the open window and truck jumping through it. I pulled him out of the vehicle and I watched him work odor back to the open window again trying to jump into the open window. It was obvious to me as his handler that he was following drug odor and was trying to get to the source of the odor as he is trained. In my experience with training and handling Gus, he will never try to jump through an open window of a vehicle unless he is trying to get to the source of drug odor. (See Jared Withers Utah Highway Patrol Crime Report, Incident: U11024449, Report R14072685).

55. Joe was still sitting in the patrol vehicle.

56. Withers returned to the car, where he and Joe had the following conversation:

| | |
|---|---|
| Joe | Did you have to let him jump all over my car like that? |
| Withers | What that is, is he's trying to go after a drug odor, is what he's doing. |
| Joe | There are no drugs. |
| Withers | Well, if there are no drugs, there's something in there with drug odor on it because twice he tried to go into the car and I had to physically keep him out. |

| Joe | He's probably doing false hits. He's probably doing false hits like all you K9 cops do, cause there ain't been nothing smoked in that car and there ain't been nothing done in that car. |
| Withers | Well, I don't know that and he can't talk. All I know is he's a trained and certified narcotic detector dog and he's trying to go into your vehicle to get the drug odor, so. I'm gonna be searching your vehicle, ok. So I'm gonna have you go stand up in front of the car. |

(See Withers bodycam at 14:38:14)

57. At this point, Joe continued to believe he was not free to leave.

***Withers' drawing of his weapon***

58. At Withers' instruction, Joe exited the patrol vehicle.

59. Withers ordered Joe to place his cell phone on the hood of the patrol vehicle.

60. Withers did not ask Joe about any other phones or other property on his person.

61. Joe put the cell phone on the hood of the patrol vehicle as requested.

62. Withers pointed out a delineator post farther down the road.

63. Withers directed Joe to stand by the post while Withers searched Joe's Avalon.

64. Withers walked Joe to the post.

65. Withers then left Joe at the post and walked alone, past the Avalon, back to his patrol vehicle.

66. Joe did not believe he was free to leave.

67. While retrieving gloves from the patrol vehicle, dispatch reported to Withers that Joe had no warrants and that Joe's driver's license was valid.

68. Withers walked back toward the Avalon, but continued walking past the Avalon to Joe.

69. As Withers approached Joe, he saw that Joe had another cell phone.

70. Withers later told other UHP troopers that Joe could not hear him coming due to the noise of traffic. (*See* Withers bodycam at 16:02:31).

71. Withers approached Joe on Joe's left side and demanded, "Let me see that!"

72. Withers took the flip-style phone from Joe's hands without giving Joe time to react or voluntarily comply with Withers' demand.

73. Joe turned approximately ninety degrees to face Defendant Withers.

74. With his left hand, Withers shoved Joe on the right side of Joe's chest causing Joe to take a step back.

75. Up to this point, Joe had been compliant and cooperative with every request and command Withers had made of him.

76. After having his phone taken and being shoved for no reason, Joe began to feel increasingly frustrated and disrespected by Withers' orders and actions, the increasing delay in his trip, and the damage Gus had done to his car that Joe had bought only two months prior.

77. Joe expressed these frustrations verbally.

| Joe | Fuck yourself, cock smoker! |
| Withers | Hey, you want that dog [Gus] to come out? |
| Joe | Oh, go ahead. I'd love to sue you. |
| Withers | How many more phones you have? |
| Joe | I'd love to sue you. |
| Withers | How many more phones you have? |
| Joe | Let the dog out. Let him bite me. |
| Withers | How many more phones do you have? |
| Joe | Fuck your mom! |
| Withers | Do you have more phones? |
| Joe | No, I don't. I don't have time for your fucking bullshit. |

> Withers        OK. Stay there.
> (See Withers bodycam at 14:41:06)

78. Withers started walking back to the Avalon with his back turned to Joe, looking over his shoulder at Joe.

79. Withers had taken approximately six steps away from Joe toward the Avalon when Joe shouted, "Fucking suck a dick!"

80. Withers stopped walking.

81. In response to Joe's declaration, Withers lost his temper. He was already irritated about Joe's comment about Withers' mother. In fact, Withers was so bothered that he brought up the comment later to another officer, stating "Dude, I don't like him much after he said what—about my mom. You know? I mean, that was like—dude, that was below the belt there." (*See* Withers bodycam at 15:37:50).

82. Withers drew his gun and aimed the gun at Joe's upper body.

83. Joe was startled to see Withers pointing a gun at him.

84. Withers shouted at Joe, "Get your hand out of your pocket!"

85. Joe immediately put his hands in the air.

86. Joe shouted, "I don't have anything. My hands are out of my pockets."

87. Withers ordered Joe to turn around and put his hands on the back of his head. Joe complied.

88. Withers called dispatch for another unit.

89. Withers handcuffed Joe with his hands behind his back. He told Joe, "You're not under arrest; you're being detained."

90. Joe believed he was not free to leave.

91. Withers walked Joe back to the patrol vehicle.

92. Withers patted Joe down.  Joe had no other property or weapons.

93. Withers placed Joe in the front passenger seat of the patrol vehicle.

94. A short while later, Withers moved Joe to the rear passenger-side seat.

95. The rear door had no interior door handles with which to exit the vehicle.

96. Joe continued to believe that he was not free to leave.  Nor would it have been physically possible for him to leave, with his hands cuffed behind his back and in the back of a car with no interior door handles.

97. Withers left Joe in the patrol vehicle.

98. Withers positioned Joe's cell phones on the hood of the patrol vehicle.

99. Withers walked to the front passenger door of Joe's Avalon, opened the door, and began to search Joe's vehicle.

100. UHP Trooper Jesse Williams ("Williams") arrived at the scene.

101. When Williams arrived, Withers relayed his version of events to Williams.  Withers falsely stated to Williams that he drew his gun because Joe had attacked him:

> Deploy—deploy dog on it. Dog tries to go through the window twice; twice I have to yank him back out of the car. I tell him (Joe) to go up there. Starts giving me a little bit of attitude. I think he'll be fine; he's way up there. So I go get some gloves and I notice he's up there with his back turned and he's doing this (demonstrates shielding) and I'm like, oh crap, he's got another phone. So I walk up there and he's got a burner phone, but he's hurried and texting on it. So I go 'yoink' (demonstrates), I yank it out of his hand, and the fight was on. I actually drew down on him; I took the phone from him, he gets in my face, lunges at me, and then he reaches in his pocket. I went to gun, boom, and yeah.
> (*See* Withers bodycam at 14:45:56) (parentheticals added for clarity).

102. As reflected in Withers' bodycam footage, Withers' statements about the confrontation with Joe were false.  Among other things:

    a.   After Wither took the phone, Joe did not step closer to Withers' face; neither did Joe lunge at Withers.

    b.   After Withers took Joe's phone, Withers pushed Joe, causing Joe to step backward.

    c.   It was Withers who had approached Joe.  Joe turned to face Withers but remained approximately an arm's length from Withers' person.

    d.   There was no "fight".

    e.   Withers had taken approximately six steps away from Joe when Withers turned around and drew his gun, and he did so only after Joe yelled another taunt at Withers.

    f.   When Withers drew his weapon on Joe, Withers remained approximately six steps from Joe.  Joe remained in place and had not moved any closer to Withers.

103. Williams joined Withers in searching Joe's Avalon.

104. According to Withers' bodycam footage, Withers' and Williams' search of the Avalon took 1 hour and 15 minutes, from 2:45 p.m. until approximately 4:00 p.m.

105. Throughout the search, Joe was left with his hands cuffed behind his back in the back seat of Withers' vehicle.

106. During the search of the Avalon, Withers took apart the rear seats as well as the lining between the rear passenger compartment and the trunk.

107. The Troopers located money that Joe had secured in his vehicle.

108. The money was United States legal tender.

109. Withers advised Joe, "Ok, Joe. At this point you're being detained for the large amount of money that's in the car."

110. There is no law prohibiting the carrying of legal tender.

111. Withers and Williams found no drugs or drug paraphernalia in Joe's vehicle.

112. The Troopers took the cash.

113. Withers transported Joe to the UHP office in Tooele County.

114. The Avalon was towed to the UHP office in Tooele County.

115. Withers seized a total of $90,350.00 of Joe's money.

116. Joe was booked into the Tooele County jail at 8:28 p.m. on November 13, 2018.

117. On the citation, Withers wrote equipment violation, money laundering, and criminal conspiracy. (*See* Jared Withers Utah Highway Patrol Crime Report, Incident: U11024449, Report R14072685).

118. While being booked, Joe's DNA was collected.

119. UHP handed Joe an "Asset Seizure Notification Form" stating that the following property had been "seized for forfeiture and will be held pending further order of the court or a final determination of forfeiture": "an unknow[n] amount of US currency. (subject said 89,000.) And $1350 in US currency from subjects' pocket."

120. Joe's Avalon was towed from the Tooele UHP office to an impound lot.

121. The next day, on November 14, 2018, at 10:42 a.m., UHP deposited $90,350.00 of Joe's money into Wells Fargo Bank.

122. Joe was released from jail on November 14, 2018, at approximately 3:09 p.m.

123. Because his car had been impounded, Joe had to hire a taxi to take him to the impound lot where he could retrieve his vehicle.  Joe also had to pay to retrieve his vehicle from impound.

124. No criminal charges were ever brought against Joe.

18

125. Despite the absence of any criminal charges, on January 24, 2019, the State of Utah filed a civil action against Joe asking that Joe's money be "forfeited."

126. Joe had to hire an attorney to defend against the State's attempt to keep his money.

127. On March 7, 2019, Joe's attorney filed a motion to exclude all evidence.  The motion was based on the grounds that, among other things, Withers had no lawful basis to stop Joe.

128. The State did not file any response attempting to justify Withers' stop of Joe.  Instead, on March 25, 2019, the State voluntarily dropped its forfeiture lawsuit and agreed to return Joe's money to him.

129. Joe paid $18,070.00 to the forfeiture attorney, equaling 20 percent of the amount of his money that had been seized.

130. Joe also incurred other out-of-pocket expenses and damages as a result of Withers' unlawful actions, including:

    a.   $55.00 to obtain records from Utah Highway Patrol through a GRAMA request;

    b.   $250.00 jury demand fee to the Third District Court;

    c.   $25.00 wire transfer fee from Wells Fargo Bank;

    d.   Taxi fare to impound lot;

    e.   Money paid to impound lot;

    f.   Compensation to an attorney to confirm that Joe's DNA sample has been handled in the manner required by statute when charges were not brought within 90 days of booking, and to enforce all other statutory requirements governing the collection of Joe's DNA upon booking;

    g.   The cost of a new paint job for his vehicle.

131. Joe has been required to hire seasoned civil rights counsel in order to vindicate his constitutional rights.

### FIRST CLAIM FOR RELIEF

*(Fourth Amendment and Utah Constitution Art. I, § 14)*

132. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

133. At all times relevant hereto, Plaintiff had a right to be free of unreasonable stops, searches, seizures, and detentions, under the Fourth Amendment to the U.S. Constitution, and Article I, § 14 of the Utah Constitution.

134. At all times relevant hereto, and in performance of the acts set forth herein, Defendant Withers acted under color of state law.

135. At all times relevant hereto, and in performance of the acts set forth herein, Defendant Withers actively and personally caused the violations of constitutional rights alleged herein.

136. Defendant Withers' conduct alleged herein—including, an unreasonable stop, unlawful detainment, unreasonable and excessive force, unlawful search, and unlawful seizure— violated Plaintiff's rights under the Fourth Amendment to the U.S. Constitution as well as Article I, § 14 of the Utah Constitution.

137. The unlawful misconduct of Defendant was objectively unreasonable and undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

138. Defendant Withers' actions violated Plaintiff's clearly established constitutional rights of which reasonable police officers are or should be aware.

139. Defendant's unlawful actions caused Plaintiff to incur damages and out of pocket expenses, which Plaintiff is entitled to recover herein.

140. Plaintiff is further entitled to attorney fees and expenses pursuant to 42 U.S.C. § 1988, pre-judgment interest, and costs as allowable by federal law.

## SECOND CLAIM FOR RELIEF

*(First Amendment and Utah Constitution Art. I, §§ 1, 15)*

141. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

142. At all times relevant hereto, Plaintiff had a right to freely express his thoughts and opinions under the First Amendment to the U.S. Constitution and Article I, §§ 1 and 15 of the Utah Constitution.

143. At all times relevant hereto, and in performance of the acts set forth herein, Defendant Withers acted under color of state law.

144. At all times relevant hereto, and in performance of the acts set forth herein, Defendant Withers actively and personally caused the violations of constitutional rights alleged herein.

145. Defendant Withers' conduct alleged herein—including the use of unreasonable force in the form of drawing his gun on Plaintiff in retaliation for Plaintiff's expression of thoughts and opinions—violated Plaintiff's rights under the First Amendment to the U.S. Constitution and Art. I, §§ 1 and 15 of the Utah Constitution.

146. The unlawful misconduct of Defendant was objectively unreasonable and undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

147. Defendant Withers' actions violated Plaintiff's clearly established constitutional rights of which reasonable police officers are or should be aware.

148. Plaintiff is entitled to attorney fees and expenses pursuant to 42 U.S.C. § 1988, pre-judgment interest, and costs as allowable by federal law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the entry of a judgment in his favor and against Defendant as follows:

1. A declaratory judgment pursuant to 28 U.S.C. § 2201, declaring that Defendants' actions violated Plaintiff's rights under the Fourth Amendment to the U.S. Constitution as well as Article I, §14 of the Utah Constitution.

2. A judgment awarding Plaintiff interest on economic losses to the extent permitted by law, including those set forth in paragraphs 129-131.

3. A judgment awarding compensation to Plaintiff for his noneconomic loss, emotional distress and other personal injury resulting from the violation of his Constitutional rights.

4. A judgment awarding Plaintiff his costs of suit, including reasonable attorney fees and litigation expenses, under 42 U.S.C. § 1988.

5. A judgment awarding such other and further relief, including equitable, declaratory, and injunctive relief, to which Plaintiff may be entitled.

DATED this 28th day of October, 2020.

CHRISTENSEN & JENSEN, P.C.


/s/ Karra J. Porter
Karra J. Porter
JD Lauritzen
*Attorneys for Plaintiff Joseph M. Hoskins*

22

JURY TRIAL DEMANDED
Plaintiff requests a jury trial on all issues under the
Seventh Amendment of the United States Constitution.