KYLE J. KAISER (13924)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
PO BOX 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
E-mail: kkaiser@agutah.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| JOSEPH M. HOSKINS, an individual, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |
| Plaintiff, | |
| v. | Case No. 2:20-cv-00749-HCN-CMR |
| JARED WITHERS, in his individual capacity; and JESS L. ANDERSON, Utah Department of Public Safety Commissioner, in his official capacity, | District Judge Howard C. Nielson, Jr. |
| | Magistrate Judge Cecilia M. Romero |
| Defendants. | |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii
INTRODUCTION ......................................................................................................... 1
LEGAL ARGUMENT ................................................................................................... 1
   1.   Trooper Withers Is Entitled to Qualified Immunity on Hoskins's Fourth Amendment Claim. ........................................................................................................................ 1
      1.1.   Trooper Withers's Stop Was Constitutional. .............................................. 1
      1.2.   The Sniff Was Constitutional. .................................................................... 5
      1.3.   The Search of the Vehicle Was Constitutional. ......................................... 7
      1.4.   The Arrest Was Constitutional. .................................................................. 7
   2.   Trooper Withers Is Entitled to Qualified Immunity on Hoskins's First Amendment Retaliation Claim. ....................................................................................................... 7
   3.   Hoskins's Alleged Rights Are Not Clearly Established. ...................................... 8
   4.   Trooper Withers Is Entitled to Dismiss of Hoskins's State-law Claims .............. 9
   5.   Commissioner Anderson Is Entitled to Dismissal of Hoskins's Due Process Claim. ......... 9
CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

                                                                                                                              Page(s)

Federal Cases

*Arizona v. Johnson*,
  555 U.S. 323 (2009) .................................................................................................... 8
*Arkansas v. Sullivan*,
  532 U.S. 769 (2001) .................................................................................................... 6
*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) .................................................................................................. 10
*Becker v. Kroll*,
  494 F.3d 904 (10th Cir. 2007) ................................................................................... 10
*Boling v. Romer*,
  101 F.3d 1336 (10th Cir. 1996) ................................................................................. 11
*Buck v. City of Albuquerque*,
  2007 WL 9734037 (D.N.M. Apr. 11, 2007) ............................................................. 10
*Diaz v. Metzgar*,
  2014 WL 12789002 ................................................................................................... 10
*Elliott v. Martinez*,
  675 F.3d 1241 (10th Cir. 2012) ................................................................................. 12
*Johnson v. Quander*,
  370 F. Supp. 2d 79 (D.D.C. 2005) ...................................................................... 11, 12
*Navajo Nation v. Dalley*,
  896 F.3d 1196 (10th Cir. 2018) ................................................................................... 4
*Nieves v. Bartless*,
  139 S. Ct. 1715 (2019) ............................................................................................ 6, 9
*Reichele v. Howards*,
  566 U.S. 658 (2012) .................................................................................................... 5
*Rodriguez v. United States*,
  575 U.S. 348 (2015) ................................................................................................ 7, 8
*United States v. $85,688.00 in U.S., Currency*,
  577 F. App'x 811 (10th Cir 2014) ............................................................................... 7
*United States v. Botero-Ospina*,
  71 F.3d 783 (10th Cir. 1995) .................................................................................. 2, 6
*United States v. Currency, U.S. $42,500*,
  283 F.3d 977 (9th Cir. 2002) ....................................................................................... 9
*United States v. Eckhart*,
  569 F.3d 1263 (10th Cir. 2009) ............................................................................... 3, 4
*United States v. Flores*,
  798 F.3d 645 (7th Cir. 2015) ....................................................................................... 5
*United States v. Garcia*,
  9 F.3d 118, 1993 WL 432567 (10th Cir. Oct. 27, 1993) ............................................ 9

*United States v. Ludwig,*
  641 F.3d 1243 (1250–51) ............................................................................................... 8
*United States v. Mayville,*
  955 F.3d 825 (10th Cir. 2020) ....................................................................................... 7
*United States v. Melendez-Garcia,*
  28 F.3d 1046 (10th Cir. 1994) ....................................................................................... 8
*United States v. Paoloca,*
  36 F.3d 1099, 1994 WL 534760 (7th Cir. Sept. 30, 1994) ........................................... 6
*United States v. Parada,*
  577 F.3d 1275 (10th Cir. 2009) ..................................................................................... 9
*United States v. Perdue,*
  8 F.3d 1455 (10th Cir. 1993) ......................................................................................... 8
*United States v. Ramirez,*
  86 F. App'x 384 (10th Cir. 2004) .................................................................................. 4
*Whren v. United States,*
  517 U.S. 806 (1996) ....................................................................................................... 6
*Williams v. Dep't of Rehab. & Corr.,*
  3 F. App'x 415 (6th Cir. 2001) ................................................................................... 12

State Statutes

Utah Code § 41-1a-402(1) ................................................................................................ 3
Utah Code § 41-1a-404(3)(b)(ii) ...................................................................................... 3

# INTRODUCTION

On November 13, 2018, Plaintiff Joseph Hoskins was *not* "peaceably driving through Utah along I-80." (*Cf.* Pl.'s Mem. in Opp. ([doc. 29](doc. 29)) at 1.) He was operating a motor vehicle in violation of Utah law. His license plate holder obscured the state of issuance of his plate, "one of the multitude of applicable traffic and equipment regulations of the jurisdiction. " *[United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995)](#)* (en banc). The violation provided Trooper Withers with a legal basis to initiate a traffic stop. The acts Trooper Withers performed afterward were supported and not violative of clearly established Fourth Amendment or Utah law. Hoskins's claims against Trooper Withers should be dismissed.

Hoskins's putative class action claim is similarly subject to dismissal. He seeks to constitutionalize procedure about procedure about the destruction (not the collection) of DNA, not protected by Utah law or the Due Process Clause. That claim should also be dismissed.

# LEGAL ARGUMENT

**1. Trooper Withers Is Entitled to Qualified Immunity on Hoskins's Fourth Amendment Claim.**

**1.1. Trooper Withers's Stop Was Constitutional.**

**1.1.1. Trooper Withers's Stop Was Justified by Utah Law.**

[Utah Code § 41-1a-402(1)](#) requires that license plates displayed in Utah have "the registration number, "the name of the state," and "unless exempted … a registration decal …." the be "clearly legible." Section 404 requires that license plates "shall at all times be (b) … maintained … (ii) in a condition to be clearly legible." [Utah Code § 41-1a-404(3)(b)(ii)](#). A violation of this provision is an infraction. *[Id.](#)* [§ 41-1a-404(6)](#). And if an officer observes a motor vehicle infraction, she is justified in stopping the motorist, consistent with the Fourth

Amendment. *United States v. Eckhart*, 569 F.3d 1263, 1271–72 (10th Cir. 2009) (authorizing a stop of an out-of-state vehicle displaying plates in violation of section 41-1a-404(3)).

Hoskins argues that this provision applies only to plates issued by the Utah Division of Motor Vehicles. (Pl.'s Opp. at 15.) But Hoskins's argument should be rejected considering the statute's text and in light of case law. Nothing in the statute explicitly limits enforcement of section 404 to Utah-only plates. And unlike other provisions of the subsection that proscribe the design of a license plate (something that only the Utah Division of Motor Vehicles can do), section 404(3) requires that plates be *maintained* to be readable (a requirement put upon individuals). Utah may not have the authority to "regulate [the design of] license plates issued outside of its jurisdiction," (Pl.'s Opp. at 16) but it is "competent to pass legislation dealing with" the legibility of license plates on "vehicles operated within Utah." *United States v. Ramirez*, 86 F. App'x 384, 386 (10th Cir. 2004) (unpublished).

Next, Hoskins argues that section 404(5)'s "allowances in the visibility requirement" for things like wheelchair lifts means that his obscuring the state name should also be excused. (Pl.'s Opp. at 16.) But a license plate frame *isn't* listed in the statute as an excuse for an obscured license plate, and exclusion of a license plate holder from the list of exceptions "suggests that the legislature had no intent of including [it.]" *Navajo Nation v. Dalley*, 896 F.3d 1196, 1213 (10th Cir. 2018) (citations and quotations omitted).

The Tenth Circuit specifically approved the enforcement of section 404 to an obscured California plate. *Eckhart*, 569 F.3d at 1272. And it recognized that Utah law regulating safety features of vehicles can be enforced on out-of-state cars travelling through Utah, even if the vehicle did not violate the laws of the state it was registered in. *Ramirez*, 86 F. App'x at 385–86

(concluding no Fourth Amendment violation when a Utah officer stopped a Colorado-registered car for too dark window tint, when the tint was allowed under Colorado law). The text of section 404, and the interpreting case law, all demonstrate that the stop was valid.

### 1.1.2. Alternatively, Trooper Withers's Stop Was Based on a Reasonable Mistake of Law.

Even if the Court cannot conclude at the pleadings state that Trooper Withers's stop was justified by Utah law, it can conclude that Trooper Withers's actions were at least based on a reasonable mistake of law. Hoskins's statutory interpretation argument requires synthesis of multiple, seemingly unrelated sections of the Utah Motor Vehicle Act. It requires ignoring law from this Court, and from other courts in the Tenth Circuit, approving of these types of stops. *See Reichele v. Howards*, 566 U.S. 658, 670 (2012) (noting in the context of qualified immunity, that "if judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side …."). It would require a reasonable officer to have unreasonable, super-human vision to see the "partial" scribblings of Illinois that still were visible under the license plate cover. (Pl.'s Opp. at 11, 19.)

Hoskins cites *United States v. Flores*, 798 F.3d 645 (7th Cir. 2015) (per curiam) for the proposition that the stop was unreasonable. In *Flores*, the Seventh Circuit held that an officer's reliance on Illinois's law requiring that a license plate be "clearly visible … maintained in a condition to be clearly legible, free from any materials that would obstruct the visibility of the plate" when an officer pulled over a vehicle with a license plate frame that did not obscure the state of issuance of the plate or the license number—it only covered just a portion of a few of the letters of the state of issuance. *Id.* at 646–47. The Seventh Circuit determined that a plate frame "leaving the numbers and place of origin readable" would not violate Illinois's law, and the

officer was not justified in believing that the plate was in violation of the law because the "plate information"—the plate's numbers and place of origin" were "clearly visible and legible" because it did not "impede a reasonable officer from reading [the] plate." *Id.* at 649. In this case, the state of issuance was not "clearly visible and legible," and it did impede a reasonable officer from reading the plate. *Flores* is distinguishable.

Hoskins also alleges that any mistake was unreasonable because Withers's stop was pretextual and Trooper Withers because Trooper Withers had a hunch that Hoskins was trafficking in drugs. But the presence Trooper Withers's "other subjective motives for stopping the vehicle" is "irrelevant;" the only inquiry is whether the officer "observed [a] traffic violation" or "ha[d] reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc). A stop or arrest for a traffic violation "will not be rendered invalid by the fact that it was a mere pretext for a narcotics search." *Whren v. United States*, 517 U.S. 806, 812–13 (1996).

### 1.1.3. Hoskins Does Not State a Fourth Amendment, Selective Enforcement, Claim.

Finally, Hoskins argues that he states a Fourth Amendment claim because Withers "treated [Hoskins] differently than other drivers." Hoskins claims that this is *not* an equal protection claim, (Pl.'s Opp. at 21) but rather argues that "when a person can show that an officer took action against an individual when other officers typically exercise their discretion not to do so, the cause is defeated." (Pl.'s Opp. at 20.) Hoskins cites no authority for this proposition, except a passing reference to *Nieves v. Bartless*, 139 S. Ct. 1715, 1726 (2019). But *Nieves* does not stand for the proposition that the underlying arrest lacked probable cause and violated the

Fourth Amendment, just that, in rare circumstances, such an aberrant arrest of someone exercising speech rights might violate the First Amendment.

He alleges that Trooper Withers's interpretation of section 404 will "allow for approximately one-third of Utah drivers to be stopped solely because of their license plate frames." (Pl.'s Opp. at 18.) The fact that many people violate the law doesn't mean that an officer can't enforce it—"such exercises of official discretion are unlimited by the Fourth Amendment." *Arkansas v. Sullivan*, 532 U.S. 769, 772 (2001) (Ginsburg, J., concurring).[1]

### 1.2. The Sniff Was Constitutional.

Trooper Withers's use of Gus to conduct a dog sniff while he was awaiting the results of a license check was constitutional. An officer may not prolong a stop longer than necessary to effectuate the "mission" of the stop, *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Hoskins notes that the mission includes "addressing the infraction" that was the basis of the stop. *Id.* Hoskins ignores the next paragraphs of *Rodriguez*, in which the Supreme Court recognized that an officer's mission *also* includes "ordinary inquiries incident to the traffic stop, [such as] checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355.

Trooper Withers was still completing that mission (waiting a response from dispatch on the warrant check) when he completed the sniff, and thus the stiff did not unconstitutionally prolong the stop. *United States v. Mayville*, 955 F.3d 825, 830 (10th Cir. 2020).

---

[1] For example, a vast majority of drivers exceed the posted speed limit, but the fact that "everybody speeds" can't prevent an officer from enforcing the speed limit. *see also United States v. Paoloca*, 36 F.3d 1099, 1994 WL 534760, at * 3 (7th Cir. Sept. 30, 1994) (unpublished table op.) ("Whether the defendant was traveling three, five, ten or fifty miles over the speed limit, any speed over 55 miles per hour is a violation of the law.").

5

Hoskins also cites *United States v. $85,688.00 in U.S., Currency*, 577 F. App'x 811 (10th Cir 2014) (unpublished). In addition to the case being unpublished, drawing a dissent, and not having a majority opinion, it is distinguishable: The officer in that case returned the motorist's travel documents and told him he was free to leave, at which time the officer needed additional suspicion for the continued detention. *Id.* at 812; *see also id.* at 814 (Ebel, J., concurring) (concluding that, while the trooper was awaiting a computer check, the trooper may properly ask questions and make the suspect sit in his patrol car, and a "mere" sixteen minute stop for the investigation was not unreasonable).

Hoskins argues that the stop was unreasonable because "Joe did not feel free to leave." (Pl.'s Opp. at 25.) However, this standard is irrelevant. A traffic stop is analogous to a *Terry* stop. *Rodriguez*, 575 U.S. at 354. These are temporary seizures, which are constitutional for the duration of the stop, and the fact that a person seized during a *Terry* stop does not feel free to leave is immaterial. *Arizona v. Johnson*, 555 U.S. 323, 333–34 (2009).

Hoskins argues that the display of a firearm and use of handcuffs escalated the *Terry* stop into an arrest. (Pl.'s Opp. at 26.) It does not do so when the facts available "would warrant a[n] officer] of reasonable causing in the belief that the action taken was appropriate." *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994). In this case, Trooper Withers saw Hoskins reach for his pockets after a particularly heated encounter, and after Trooper Withers discovered Hoskins using a previously undisclosed cell phone. The pointing of a firearm, and the handcuffing of Hoskins during the resulting search, was not unreasonable in light of the circumstances. *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993).

### 1.3. The Search of the Vehicle Was Constitutional.

Trooper Withers's search of Hoskins's vehicle, following drug dog Gus's alert, was constitutional. *United States v. Ludwig*, 641 F.3d 1243, 1250 (1250–51) (10th Cir. 2011). Hoskins notes that a dog alert provides probable cause only if it is objectively verifiable, and argues that because he didn't allege that Gus indicated in his complaint, then the motion should be denied. (Pl.'s Opp. at 26.) But Hoskins does allege—and the video does support—that Gus "attempted twice to enter the Avalon," (Rev. Am. Compl. (doc. 17) ¶ 53) and that Trooper Withers thrice documented how this objectively observable response indicated the presence of drugs. (Rev. Am. Compl. ¶¶ 57–61.) The Tenth Circuit's standards, with objective evidence demonstrating the dog's alert, is sufficient to provide probable cause. *United States v. Parada*, 577 F.3d 1275, 1282 (10th Cir. 2009).

### 1.4. The Arrest Was Constitutional.

Finally, Hoskins's arrest was supported by probable cause, because the presence of currency, in a hidden location, shrink-wrapped, found after a dog alerted to the presence of narcotics, provides sufficient probable cause as a matter of law. *United States v. Currency, U.S. $42,500*, 283 F.3d 977, 981–82 (9th Cir. 2002), *United States v. Garcia*, 9 F.3d 118, 1993 WL 432567, at * 4 (10th Cir. Oct. 27, 1993) (unpublished table op.) ("Once the dog alerted to the suitcases, officers had probable cause to arrest defendant.").

## 2. Trooper Withers Is Entitled to Qualified Immunity on Hoskins's First Amendment Retaliation Claim.

For the reasons stated in the Motions to Dismiss, the Court should dismiss Hoskins's First Amendment retaliation claims.

Hoskins claims that Trooper Withers engaged in a retaliatory arrest. (Pl.'s Opp. at 32.) But that line of argument holds only if Hoskins was arrested *before* the search of Hoskins's car. After the search, Trooper Withers had probable cause to arrest based on his dog's alert and his discovery of the wrapped bundle of cash stashed away. That probable cause defeats a claim of retaliatory arrest. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1723–24 (2019). For the reasons stated above, Trooper Withers did not arrest Hoskins while he conducted the search—he pointed his weapon and used his handcuffs to restrain Hoskins in response to Hoskins' actions indicating a threat to Trooper Withers's safety. Hoskins was being detained in a *Terry* stop until Trooper Withers discovered the cash, at which time he had probable cause to arrest.

Hoskins's claim that Withers's pointing of his gun at him is unconstitutional retaliation also fails for the reasons stated in Hoskins's Motions to Dismiss. Even if the Court chooses not to apply the *Graham* factors in evaluating the sufficiency of Hoskins's First Amendment claims, a plaintiff still must prove that the alleged action caused Hoskins "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in" a protected activity. *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007). Hoskins has cited no case indicating that the display of a firearm for a few seconds causes someone to suffer a speech-chilling injury.[2]

3. **Hoskins's Alleged Rights Are Not Clearly Established.**

Even if the Court determines that Hoskins states a claim under the First or Fourth Amendments, Trooper Withers is still entitled to dismissal because no right was clearly

---

[2] *Cf.* Pl.'s Opp. at 33 (citing *Diaz v. Metzgar*, No. CIV-12-1117 KG/KBM, 2014 WL 12789002, at *6 (D.N.M. Aug. 11, 2014) (unpublished) (permitting retaliation claim to move forward where police officer kicked plaintiff in the head, making him lose consciousness); *Buck v. City of Albuquerque*, No. CV 04-1000 JP/DJS, 2007 WL 9734037, at *40 (D.N.M. Apr. 11, 2007) (unpublished) (officers used tear gas, pepper spray, and physical force)).

established at the time. The cases cited by Hoskins in the substantive sections of his Motion to Dismiss are either general statements of the law, cases factually dissimilar such that they would not put "every" reasonable officer on notice of the violation, or actually conclude that no constitutional violation occurred. As such, Trooper Withers would be entitled to qualified immunity. *E.g.*, *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

**4. Trooper Withers Is Entitled to Dismiss of Hoskins's State-law Claims**

For the reasons stated in the Motions to Dismiss, Hoskins's state law claims should be dismissed, because § 1983 provides an existing remedy to preclude a state-law damages claim, or because Utah interprets its protections against unlawful searches and seizures and free speech consistent with the First and Fourth Amendment (Defs.' Mot. to Dismiss (doc. 11) at 25.)

**5. Commissioner Anderson Is Entitled to Dismissal of Hoskins's Due Process Claim.**

Finally, the Court should dismiss the Third Claim for Relief, a violation of due process— the only claim upon which Hoskins bases class action.

As explained in the earlier motion to dismiss, Hoskins (and his putative class members) do not have a liberty or property interest in the destruction of their DNA created by federal or Utah law such that the due process clauses are implicated by Hoskins's claim. (Defs.' 2d Mot. to Dismiss (doc. 23) at 14–15.) Though Hoskins has "concerns" about these arguments, the issue is not whether the State should protect people's private information given to it (it should), but rather whether the Due Process Clauses of the Utah and U.S. Constitutions recognize a *liberty* or *property* interest in the *destruction* of a suspect's DNA. They do not. *Boling v. Romer*, 101 F.3d 1336, 1340–41 (10th Cir. 1996).

Hoskins criticizes the cases cited to support the motion to dismiss as involving individuals who "have a reduce expectation of privacy, such as convicted inmates." (Pl.'s Opp. at 39 n.139.) Yet, Hoskins himself cited only one case in support of his claim—brought by a convicted felon challenging the obligation to obtain a DNA sample under federal law. *Johnson v. Quander*, 370 F. Supp. 2d 79, 84 (D.D.C. 2005). And in that case, the court rejected the plaintiff's claims under the Fourth Amendment, substantive due process, procedural due process, and other statutory claims, calling the plaintiff's claims "without merit." *Id.* at 105. While the court mentioned that a person may have some privacy interest in a DNA sample and information derived from it (in the Fourth Amendment context), it rejected any property or liberty interest in the information. Noting that DNA records establish "only a record of the defendant's identity," the court concluded that "an identification record is [not] similar, in any respect, to an interest in property." *Id.* at 102.

There is an even more striking deficiency in Hoskins's pleading. Hoskins's claim is not about the collection or destruction of DNA—it's about whether the Department of Public Service issued rules as required by the Legislature about the handling of DNA (Rev. Am. Compl. ¶ 135), how they track DNA (*Id.* ¶ 136), and that there "is no mechanism by which Joe may petition … to ensure that his DNA specimen has been destroyed." (*Id.* ¶ 139.) Thus, even if Hoskins had some liberty or property interest "in his DNA," Hoskins's concerns are about the procedure (rules) for the procedure for preserving or destroying that DNA, which are not protected by the Due Process Clause. *Elliott v. Martinez*, 675 F.3d 1241, 1244–45 (10th Cir. 2012); *Williams v. Dep't of Rehab. & Corr.*, 3 F. App'x 415, 417 (6th Cir. 2001).

## **CONCLUSION**

For the reasons stated, Defendants request that the Court grant their motion and dismiss Plaintiff Hoskins's case with prejudice.

RESPECTFULLY SUBMITTED this 9th day of August, 2021,

                                    OFFICE OF THE UTAH ATTORNEY GENERAL

                                    /s/ *Kyle J. Kaiser*
                                    KYLE J. KAISER
                                    Assistant Utah Attorney General
                                    *Counsel for Defendants*